Argued June 17, reargued in banc October 20, reversed November 3, costs taxed November 10, rehearing denied November 24, 1925.

## WILLIAM T. CAMPBELL *v.* THE CITY OF EUGENE ET AL.

(240 Pac. 418.)

**Municipal Corporations—Act Providing for Carrying into Effect Initiative Powers Guide in Municipal Legislation.**

1. In view of Sections 4105, 4109, Or. L., providing for proposal of charter amendments and submission to people with or without initiative petition, is a guide in municipal legislation in municipalities not having provided by ordinance or charter for manner of exercise of initiative powers reserved by Constitution, Article IV, Section 1a, Article XI, Section 2.

**Municipal Corporations—Time for Invoking Referendum Against Ordinance Allowed.**

2. Provision of Section 4106, Or. L., and charter of City of Eugene for thirty days to elapse after passage of ordinance before it is effective is for purpose of allowing required time for invoking referendum against the measure.

Municipal Corporations—Ordinance Ordering Special Election on Charter Amendment Held not "Municipal Legislation" Subject to Referendum.

3. In view of Sections 4105, 4106, 4109, Or. L., and Constitution, Article IV, Section 1a, Article XI, Section 2, ordinance of City of Eugene ordering special election to vote on proposed charter amendment, being special rule for special temporary purpose, *held* not "municipal legislation" subject to referendum, and therefore it was unnecessary for thirty days.

Municipal Corporations—Referendum Provision Applicable Only to Municipal Legislation.

4. Constitution, Article IV, Section 1a, Article XI, Section 2, providing for initiative and referendum, can only apply to acts of common council which constitute municipal legislation.

Municipal Corporations—Municipal Legislation Distinguished from Administrative Act.

5. Action of municipal council relating to subjects of permanent or general character is municipal legislation, while those which are temporary in operation and effect or administrative are not.

Municipal Corporations—Distinction Between Legislative Act and Administrative Act not Destroyed Because Latter Accomplished by Ordinance.

6. Distinction between legislative acts and those that are administrative is not destroyed because charter of city may require latter to be accomplished by ordinance.

Municipal Corporations—Order for Special Election, Though Effected by Ordinance, Held not Municipal Legislation.

7. Fact that order for special election must be effected by ordinance and not by resolution will not bring act within classification of municipal legislation.

Municipal Corporations—Test of Whether Act is Legislative or Administrative, Stated.

8. Test of question of whether action of common council is legislative or administrative is determination of question whether act was making a law or executing one already in existence.

Statutes—Language of Lawmakers Construed to Effectuate Object and Purpose of Law.

9. It is established rule of statutory construction that such meaning is to be given to language of lawmakers as will effectuate object and purpose of law.

---

4. Construction of provision in Constitution, statute, or municipal ordinance for initiative and referendum, see notes in **Ann. Cas.** 1916B, 819, 855, 860, 865; Ann. Cas. 1917E, 739, 985.

Application of initiative and referendum to municipal matters, see notes in 50 **L. R. A. (N. S.)** 200; L. R. A. 1917B, 19.

**Municipal Corporations—Ordinance for Special Election on Charter Amendment Held not Legislative as Involving Question of Taxation.**

10. Ordinance of City of Eugene, ordering special election to vote on charter amendment, empowering city to issue bonds for auditorium, *held* not legislative as involving question of taxation; action of council in calling election being merely administration of power given to it by statute and not pretense to enact legislation.

**Statutes—Constitution Held Paramount to Statute.**

11. Constitution, Article IV, Section 1a, Article XI, Section 2, providing for initiative and referendum, is paramount to Sections 4105, 4106, 4109, Or. L., providing for carrying Constitution into effect, and controls such legislative enactments, and latter must be construed in connection with constitutional provisions.

**Municipal Corporations—Invalidity of Emergency Section Held not to Affect Balance of Ordinance.**

12. Ordinance of City of Eugene calling for special election to vote on charter amendment passed by legislature, vote of council *held* sufficient for its enactment, although not having enough affirmative votes to effectuate emergency clause, and invalidity of emergency section did not affect balance of ordinance; it not being essential that ordinance contain emergency clause in order that it take effect on its passage.

From Lane: PERCY R. KELLY, Judge.

In Banc.

This is a suit to enjoin the officers of the City of Eugene from issuing and selling certain municipal bonds authorized at a special election held in the city July 2, 1924, for the purpose of constructing an auditorium within the limits of the city. The trial court granted the injunction and the defendants appeal. The proceedings necessary to be referred to for an understanding of the case were substantially as follows:

The City of Eugene is a municipal corporation of more than 2,000 people organized under an act of the Legislative Assembly of the State of Oregon of February, 1905, and various acts amendatory and supplemental thereto. The appellants Parks and Gilmore are respectively the mayor and recorder of the

City of Eugene; the appellants Walker, Washburne, McAlister, Williamson, Monroe, Simmons, Large and Wallace are the members of the common council of the City of Eugene. The appellants Hamilton, Gerlinger, Colt, McKinney, Gordon, Woodson, Vawter, Gilbert, Fiske and Jackson are the regents of the University of Oregon.

On May 1, 1924, the common council of the City of Eugene, acting under Section 4109, Or. L., passed a resolution proposing a charter amendment to the municipal charter of the City of Eugene. The resolution was filed in the office of the city recorder of the City of Eugene on that day and provided that the election upon the proposed charter amendment to the City of Eugene should be held on the second day of July, 1924. The amendment authorized and empowered the City of Eugene, Oregon, to issue and sell the negotiable bonds of the city in the sum of $500,-000, the proceeds therefrom to be used in the construction and equipment of a municipal public auditorium in the city.

On June 11, 1924, the common council of the City of Eugene passed an ordinance ordering a special election to be held in the city on the second day of July, 1924, for the purpose of the electors of the said City of Eugene to vote upon the proposed charter amendment, which said ordinance designated the polling places, named the clerks and judges of said election, and provided that the polls of said election should be open from 8 o'clock in the morning until 8 o'clock in the evening on said day, which ordinance was approved by the mayor of the city on the eleventh day of June, 1923. The election was held on the second day of July, 1924. On the seventh day of July, 1924, the common council assembled and canvassed the votes cast upon said measure, and found

that 1,112 were in the affirmative, or in favor of the said proposed charter amendment, and 1,082 votes in the negative or against the measure, and that the said measure had carried by a majority of 30 votes, and duly proclaimed the result of said election and that the said charter amendment had been adopted by a majority of the electors voting at said election. On the fourteenth day of July, 1924, the common council of the City of Eugene passed an ordinance, numbered 4293, authorizing the issuance and sale of the bonds authorized by said charter amendment so adopted by the electors. Thereafter, on the tenth day of August, 1924, after this suit had been commenced by the filing of an original complaint and the service of summons and complaint upon the appellants, the respondent served and filed an amended complaint. On the fifteenth day of August, 1924, the defendants filed a joint demurrer against said amended complaint, alleging as grounds of demurrer that the complaint does not state facts sufficient to constitute a cause of suit against said defendants, either jointly or severally. The trial court overruled the demurrer. Thereupon the defendants filed their joint answer.

The respondent filed a demurrer to the answer of the defendants, alleging as grounds of demurrer that the said answer does not state facts sufficient to constitute a defense on behalf of the City of Eugene, and the officers of the said city, and for the further reason that the admitted facts show that the plaintiff was entitled to the relief prayed for. On the thirty-first day of December, 1924, the court entered an order sustaining the said demurrer to the answer. Thereupon the appellants on the sixth day of January, 1925, elected to stand upon their answer and declined to plead further, and a decree was entered

in favor of the respondent and against the appellant, as prayed for in the complaint.

The resolution of the council proposing an amendment of the city charter, the ordinance calling for a special election, the ordinance authorizing the issuance of the bonds, and all of the proceedings pertaining to the special election, the returns and the canvassing of the votes cast upon the measure and the proclamation of the result of the election, are contained in the pleadings herein.

REVERSED AND DECREE ENTERED.

For appellants there was a brief over the names of *Messrs. Potter, Foster & Immel, Messrs. Williams & Bean, Mr. S. M. Calkins* and *Mr. I. H. Van Winkle,* Attorney General, with oral arguments by *Mr. O. H. Foster* and *Mr. William G. Hale.*

For respondent there was a brief and oral argument by *Mr. H. E. Slattery.*

BEAN, J.—The question involved in the assignments of error centers around the validity, or invalidity, of the special election amending the city charter and authorizing the issuance of the municipal bonds. The position of plaintiff is that the special election was not authorized by law in that the ordinance calling the same, passed June 11, 1924, could not take effect prior to thirty days after its enactment and, therefore, was not in effect when the election was held on July 2, 1924.

The case hinges upon this point.

1. It is conceded that prior to the calling of the special election, the City of Eugene had never enacted a general ordinance or law relative to the calling of special elections except by charter amendments in 1914, which provides that election upon initiative measures shall be governed by the general laws and Constitution

of the State of Oregon. The legislature in 1907 enacted a statute providing *inter alia* for carrying into effect the initiative and referendum power reserved by the people in Section 1a, of Article IV and Section 2 of Article XI of the Constitution on general, local, special and municipal legislation. Section 4109, Or. L., being a part of the act of 1907, and under which the council of the City of Eugene proceeded, reads in part as follows:

"Amendments to any city charter may be proposed and submitted to the people by the city council, with or without an initiative petition, but the same shall be filed with the city clerk for submission not less than sixty days before the election at which they are to be voted upon, and no amendment of a city charter shall be effective until it is approved by a majority of the votes cast thereon by the people of the city or town to which it applies. The city council may by ordinance order special elections to vote on municipal measures."

The general provisions of the act were intended for guidance in municipal legislation in cities and towns which have not provided by ordinance or charter for the manner of exercising the initiative powers reserved by the Constitution to the people thereof, as to their municipal legislation. This is indicated by Section 10 of the act, Section 4105, Or. L. Section 1a, Article IV of the Constitution, ordains in part, thus:

"The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation." See

*McKenna* v. *City of Portland,* 52 Or. 193 (96 Pac. 552).

In the present case the proposed charter amendment was filed with the city recorder more than sixty days prior to the election. The council by resolution followed Section 4109, Or. L. Ordinance No. 4174, ordering the special election, was passed by an affirmative vote of five of the members of the common council. The ordinance was not approved by the affirmative vote of three fourths of the members elected to the city council, in order to declare an emergency, as provided in Section 4106, Or. L. Nor was such approval by an affirmative vote of two thirds of all the members elected to the common council, as required by the city charter, in order to declare an emergency. It is not claimed that the emergency clause is effective for the purpose of shortening the time for the ordinance to take effect. Section 4106, Or. L., provides:

"Referendum petitions against any ordinance, franchise or resolution passed by a city council shall be signed by not less than ten per cent of the voters of said city, and said signatures shall be verified in the manner herein provided and the registration or voters lists on file in the office of the county clerk of the county in which such city or town is situated shall be available for verifying said signatures; the petition shall be filed with the city clerk, auditor or recorder, as the case may be, within thirty days after the passage of such ordinance, resolutions or franchise. No city ordinance, resolution or franchise shall take effect and become operative until thirty days after its passage by the council and approval by the mayor, unless the same shall be passed over his veto, and in that case it shall not take effect and become operative until thirty days after such final passage, except measures necessary for the immediate preservation of the peace, health, or safety of the city; and no such emergency measure shall become immediately

operative unless it shall state in a separate section the reasons why it is necessary that it should become immediately operative, and shall be approved by the affirmative vote of three fourths of all the members elected to the city council, taken by ayes and noes, and also approved by the mayor.''

The printed charter of the City of Eugene, page 62, Section 1, provided:

''No city ordinance enacting *municipal legislation* shall take effect and become operative until thirty days after its passage by the Common Council and approval by the Mayor, except emergencies,'' etc. (Italics ours.)

2. It is plain from the language of Section 4108, Or. L., and the charter, that the provision for thirty days to elapse after the passage of an ordinance is made for the purpose of allowing the required time for invoking the referendum against the measure. If the ordinance in question could not be referred to the legal voters of the city, the reason for the application of the thirty-day provision fails.

3. The defendants contend that the city ordinance, ordering the special election for the purpose of voting on the proposed charter amendment, was an administrative act, and is not ''municipal legislation'' within the meaning of the Constitution and the statutes enacted for the purpose of furnishing the *modus operandi* for carrying the constitutional mandate into effect. The plaintiff maintains the contrary.

By Article XI, Section 2, of the Constitution of the State of Oregon:

''The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon,'' etc.

4. It is clear that the referendum provisions of the Constitution can only apply to acts of a common council which constitute ''municipal legislation.''

In *Long* v. *City of Portland,* 53 Or. 93, at page 100 (98 Pac. 324, 98 Pac. 1111), the following language by Mr. Justice EAKIN, which pertains to this question, is recorded:

"The effect of the referendum will not, however, affect in any manner ordinances or resolutions of the council that are not 'municipal legislation.' Section 11 of the legislative act of 1907 (Laws 1907, p. 406), provides that 'no city ordinance, resolution or franchise, shall take effect and become operative until 30 days after its passage by the council and approved by the mayor,' and defendant cites this provision as being especially cumbersome to the prompt and expeditious transaction of municipal business, and in proceedings that are *in invitum,* such as those relating to street improvements; but this legislative act can only apply to such ordinances, resolution, and franchises as are subject to the referendum. It cannot be broader than the provision it seeks to aid. The only acts of the council that are subject to the referendum, by Section 1a, Article IV, are such as come within the term 'municipal legislation.' Legislation as here contemplated must be considered in the sense of general laws, namely rules of civil conduct prescribed by the law-making power and of general application."

5–7. The opinion in the case of *Curtis* v. *Tillamook City,* 88 Or. 443, 456 (171 Pac. 574, 172 Pac. 122), is instructive in regard to the application of the Constitution and statute and charter, and makes the matter clear. There the council on April 2, 1921, adopted an ordinance providing for a special election. The election was held on April 12th of that year. In the opinion upon rehearing, on page 456 of the Report, we find the following language of Mr. Justice HARRIS:

"It may be assumed, however, for the purpose of the instant case that the legislative act of 1903 pre-
116 Or.—18

scribed the manner in which the initiative and referendum powers should be exercised both in passing ordinances and in amending the charter. If the charter did so provide it was by force of an act of the legislature; but when the state Constitution was amended in 1906 this amendment to the Constitution by its own force amended the charter of every city and town in the state so as to enable all cities and towns to prescribe their own method for exercising the initiative and referendum powers. When Ordinance No. 233 was enacted it was adopted pursuant to a power that had been written into the charter in 1906 and consequently Ordinance No. 233 not only superseded Chapter 226, Laws of 1907, but it also supplanted the method fixed by the legislature in 1903.''

The opinion in this case enunciated a rule in regard to the adoption of municipal ordinances which has been in vogue in Oregon for about seventeen years and should not be changed without a cogent reason therefor. See, also, *Opinion of the Justices,* 66 N. H. 629 (33 Atl. 1076). Whatever may be the requirement as to the form of the enactment, the action of a municipal council relating to subjects of a permanent or general character is municipal legislation, while those which are temporary in their operation and effect or administrative are not municipal legislation: 2 Abbott's Municipal Corp., §§ 514, 516; 1 Beach on Public Corp., §§ 483, 484, 486; 21 Am. & Eng. Ency. of Law (2 ed.), 948; 28 Cyc. 347; *City of Alma* v. *Guaranty Sav. Bank,* 60 Fed. 203 (8 C. C. A. 564); *City of Lincoln* v. *Sun Vapor Street Light Co.,* 69 Fed. 756 (8 C. C. A. 253); *City of Central* v. *Sears,* 2 Colo. 589. The distinction between acts that are legislative and those that are administrative is not destroyed by reason of the fact that the charter of the city may require the latter to be accomplished by an ordinance: *Long* v. *City of*

*Portland, supra; Shaub* v. *Lancaster City,* 156 Pa. 362, 366 (26 Atl. 1067, 1068, 21 L. R. A. 691). The fact that an order for a special election must be effected by an ordinance and not by a resolution will not bring the act within the classification of municipal legislation: 1 Beach on Public Corp., § 484.

The rule is stated by McQuillin on Mun. Corp., Volume 7, Section 351c, page 6621, as follows:

"Executive Distinguished from Legislative Referendum.—Both legislative and executive powers are possessed by municipal corporations. Often executive powers are vested in the council or legislative body and exercised by motion, resolution or ordinance. Executive action evidenced by ordinance or resolution does not subject such action to the power of the referendum, which is restricted to legislative action as distinguished from mere administrative action. The form or name does not change the essential nature of the real step taken. The mode of effecting the action is not important. If legislative the law contemplates the people may invoke the referendum. The referendum is usually held 'applicable to all ordinances and resolutions which constitute an exercise of legislative power.' That is, it was designed to be directed against 'supposed evils of legislation alone.' 'To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city.'" Dillon on Mun. Corp. (5 ed.), § 572; *Ehrhardt* v. *City of Seattle,* 33 Wash. 664 (74 Pac. 827).

8. The legislature of this state enacted a law, which was in force in the City of Eugene, providing for ordering special elections to be held to vote upon municipal measures, and the common council of the city in calling or ordering this special election was making no general law, enacting no legislation, but was simply and purely carrying out or executing a law already

made by the legislature. An accurate test of the question as to whether an action of the common council is legislative or administrative is the determination of the question whether the act of the council was making a law or executing one already in existence. In *Ehrhardt* v. *City of Seattle, supra,* the syllabus, which indicates the decision, reads thus:

"A city charter provided in one section that every legislative act should be by ordinance, and that every ordinance should be clearly entitled, and contain but one subject, to be expressed in the title. Another section provided for amendments to the charter, and their submission to the electors, but prescribed no formality for their proposal, and no requirement that it should be by ordinance, but merely that they should be proposed in the city council. Held, that a proposition to amend the charter passed by the city council for submission to the electors need not be passed by ordinance, but might be by resolution."

In *Kiernan* v. *Portland,* 57 Or. 454 (111 Pac. 379, 112 Pac. 402, 37 L. R. A. (N. S.) 332), the syllabus reads as follows:

"Where a city ordinance as amended, providing for submission to voters of an amendment to the city charter, was repealed, because of supposedly irregularity, the fact that the repealing ordinance did not take effect for thirty days did not deprive the council of power to pass a resolution to submit the charter amendment to a vote, at the coming election, before the thirty-day period had expired."

In *Yarbrough, Mayor* v. *Donaldson,* 67 Okl. 318 (170 Pac. 1165), under a state law authorizing the city council to sell and dispose of certain of its property, the common council of a city proposed to sell its electric light plant and adopted a resolution disposing of the same. Certain voters presented to

the mayor a referendum petition, which he declined to file and refused to call an election to vote upon the referendum. A *mandamus* was instituted to compel him to do so. In passing upon the question the court said:

"The city, by the resolution providing for the sale of its electric light plant, was not exercising a legislative function but was administering a law already made, to wit, Section 541, *supra*, giving it the power to dispose of its property."

In *Brazell et al.* v. *Zeigler*, 26 Okl. 826 (110 Pac. 1052), the point involved was whether the action of the board of county commissioners in ordering the clerk to advertise for bids for the construction of a certain bridge "was local municipal legislation or administrative action." The court, after referring to the law prescribing the procedure for carrying out the initiative and referendum in municipalities, said:

"Tested by the rule that municipal legislation consists of prescribing by the lawmaking power of the municipality a rule of civil conduct, was the board in making the order making law, or was it administering or executing a law already made? If it was making law it was exercising legislative function and the result of its act was municipal legislation. If it was administering a law already made it was exercising administrative function, and the result of its act not municipal legislation, but administrative action; for, as stated by Mr. McQuillin in his work on Municipal Ordinances, § 80, 'executive and administrative duties are such as concern the execution of existing laws.'"

In 36 C. J., page 966, we read:

"Legislation. A word with a well defined meaning in law; act of legislature; laws or statutes enacted; the act of giving or enacting laws; act of making or passing a law or laws; the enactment of laws; the exercise of sovereign power; the power to make laws;

the authority conferred by or exercised under the constitution of a state or of the United States to make new laws or to alter or repeal existing ones."

In note 48 (a), on the same page, we find:

" 'Ratification of constitutional amendment not legislation.—(1) Ratification by a state of a constitutional amendment is not an act of legislation within the proper sense of the word. It is but the expression of the assent of the state to a proposed amendment." *Hawke* v. *Smith*, 253 U. S. 221, 229 (64 L. Ed. 871, 40 Sup. Ct. Rep. 4S5, 10 A. L. R. 1504). (2) Ratification of an amendment to the Federal Constitution is 'not an act of legislation within the proper sense of the word.' *Leser* v. *Board of Registry*, 139 Md. 46, 73 (114 Atl. 840)."

Ib. (b):

"A proposal to amend the state constitution is not legislation." *Warfield* v. *Vandiver*, 101 Md. 78 (60 Atl. 538, 542, 543, 4 Ann. Cas. 692).

Ib. (c):

"The appointment of a committee to gather information and make recommendations in regard to amending, enacting or repealing laws is (not) 'legislation' within the meaning of the word as used in our Constitution." *Ex parte Wolters*, 64 Tex. Cr. 238, 322 (144 S. W. 531, Ann. Cas. 1916B, 1071).

In *City of Batesville* v. *Ball et al.*, 100 Ark. 496 (140 S. W. 712, Ann. Cas. 1913C, 1317), in discussing a kindred question the court, at page 1320 of the latter report, said:

"The ordinances of a general or permanent nature which must be adopted according to the formalities of section 5481 of Kirby's Digest refer to those regulations and acts of the council which prescribe a permanent rule of government for the municipality. The action of the council submitting the question of annexation is only the expression of its view or

opinion that proceedings looking to that end should be put in motion. Under the provisions of section 5519 of Kirby's Digest, relating to the annexation of territory to municipalities, the submission of the question by the municipal council is only one of the steps to be taken in the proceedings." See *Kline* v. *Streator,* 78 Ill. App. 42.

We all remember that under the old local option law a special election for the purpose of voting upon prohibition was called by order of the County Court upon a proper petition therefor. It would hardly be thought that the County Court in making such an order and submitting the matter to the voters was performing a legislative act.

A charter amendment to the city charter of Eugene can be proposed by resolution by the common council and the common council can then by ordinance call a special election, providing and giving to the electors the privilege of voting either for or against the proposed charter amendment. If it should be held that the action of the council in so ordering the election should be subject to the referendum, the situation would be peculiar. It would be to the effect that the electors of the city would have the right to vote at an election upon the question as to whether an election should be held, to which they would vote upon another question, or the same question, at a succeeding election. If the second question should be attempted to be referred to a special election by a second ordinance ordering a special election for that purpose, then the second ordinance under the same process of reasoning could be referred to the people and so on, *ad infinitum,* so that the provision of Section 1a, Article IV of the Constitution, reserving the right of the initiative and referendum powers "to the legal voters of every municipality and dis-

trict as to all local, special and municipal legislation,'' would by its own weight sink into oblivion and be absolutely annulled, in so far as the exercise of such power at a special election is concerned.

The common council of the City of Eugene in calling the special election enacted no permanent law or general rule of conduct but a special rule for a special temporary purpose. They simply proposed a law to the voters of the municipality, who by virtue of the Constitution are authorized to legislate a measure amending the charter of the city. The council has not the power to amend that municipal law: *Colby* v. *Medford*, 85 Or. 485, 514 (167 Pac. 487); *Birnie* v. *La Grande*, 78 Or. 531, 538 (153 Pac. 415.) The action of the common council in ordering a special election was not a legislative act within the meaning of the Constitution and statute. The ordinance embracing such order was not subject to the referendum, and took effect upon its passage and approval by the mayor. In other words, we hold that irrespective of whether the ordinance is, strictly speaking, municipal legislation or not, the ordinance in question calling the special election on the date named in the resolution and passed by the council was not subject to the referendum. Therefore, there was no necessity or reason for thirty days to elapse after its passage before it took effect.

9. The law does not require a vain thing to be done. The electors of the city had ample opportunity to ballot on the measure once. The law does not, and should not, provide for two elections to vote practically upon the same measure. It is an established rule of statutory construction that such meaning is to be given to the language of the lawmakers as will effectuate the object and purpose of the law: *Ankeny*

v. *Multnomah County,* 4 Or. 271, 273; *State ex rel.*
v. *Hall,* 73 Or. 231, 235 (144 Pac. 475).

It has been decided in this state that a substantial compliance with a charter requirement is sufficient: *State* v. *Kelsey,* 66 Or. 70, 77 (133 Pac. 806);
*State ex rel.* v. *Dalles City,* 72 Or. 337, 350 (143 Pac. 1127, Ann. Cas. 1916B, 855); *Colby* v. *City of Medford,* 85 Or. 485, 508 (167 Pac. 487).

The resolution of the common council passed on May 1, 1924, which was the first step in the proceedings, fixed the date for holding the special election in the following language:

"It is hereby resolved by the mayor and common council of the city of Eugene, that there be submitted to the electors of said city for their approval or rejection at a special election to be held in the city of Eugene on the 2nd day of July, 1924, the annexed Charter Amendment, being, * * "

As stated, the resolution and the proposed enactment, amending the city charter authorizing the issuance of the bonds, was filed in the office of the city recorder more than sixty days prior to the election. The ordinance, No. 4174, carries out the resolution and names the same date for the election.

In *State ex rel.* v. *Gates,* 190 Mo. 540, 558 (89 S. W. 881, 2 L. R. A. (N. S.) 152), it is stated, quoted in 2 McQuillin, Section 704:

"The form in which the act is expressed is immaterial; the act done donates its character. * * "

As clearly pointed out by Mr. Justice Brown in the case of *State ex rel.* v. *Kozer* (Or.), 239 Pac. 805, recently decided, it is necessary that the law authorize the holding of an election in order for the same to be valid, and it is there shown that at the time the bill there under consideration was passed by the

legislature, there was no law authorizing the special election in question in that case. However, that is not the condition in the instant case. Section 4109, Or. L., which was passed pursuant to constitutional authority, plainly provides for a special election to vote on municipal measures. The law authorizing the special election in question had already been enacted before the resolution and ordinance calling the special election were passed. There was then no necessity for further legislation authorizing the special election to be held. The municipal authorities in passing the ordinance were simply executing the law in force prior to that time.

All ordinances of the City of Eugene go into effect immediately upon their passage and approval by the mayor, except ordinances enacting "municipal legislation." In the present case the special election was ordered by an ordinance in conformity with the statute. All the details required for the submission of the charter amendment to the electors of the city were provided in the ordinances adopted. The notice of election was regularly given and published.

10. It is urged by the learned counsel for plaintiff that "this proceeding involves the question of taxation and is legislative." This contention may be answered or explained as follows: The enactment of the charter amendment by the electors of the city involves a question of taxation, and is legislative. The action of the council in calling the election is merely the administration of a power given to the council by the statute and simply proposes legislation and does not pretend to enact legislation. The power to cause the taxation is by virtue of the Constitution vested in the people of the city, and they alone exercised the power in the instant case.

The plaintiff cites and relies upon the case of *National Bank of Commerce* v. *Town of Granada,* 44 Fed. 262. It was there held that an ordinance calling for an election to authorize the funding of the floating debt of a town, which ordinance was passed but not recorded or published as required by the statute of Colorado, before it would take effect, never went into effect and that the bonds authorized by such election were void. In that case the circumstances and the law were different from those involved here. We find no decisions holding that an ordinance calling a special election is "municipal legislation" where the ordinance pertains to or involves the initiative and referendum powers.

11. The Constitution of the state, Article IV, Section 1a, and Article XI, Section 2, is paramount to the statute and controls the legislative enactments. Sections 4106 and 4109, Or. L., must be construed in connection with the Constitution as announced by Mr. Justice EAKIN in *Long* v. *Portland, supra,* where a city, either by its charter or by ordinance, has prescribed its own procedure under Article IV, Section 1a, for the exercise of the initiative and referendum powers, the general provisions of the statute directing such procedure do not apply: *Colby* v. *City of Medford, supra; State ex rel.* v. *Andresen,* 75 Or. 516 (147 Pac. 526).

12. The ordinance in question was passed by a majority vote of the common council, which was sufficient for its enactment although it did not have enough affirmative votes to effectuate the emergency clause. The invalidity of the emergency section did not affect the balance of the ordinance: *Barton* v. *Recorder's Court,* 60 Or. 273 (119 Pac. 344). It was not essential that the ordinance contain an

emergency clause in order for it to take effect upon its passage. The ordinance not being subject to being referred to the voters of the city, it would be futile to require it to be held in abeyance for thirty days before it took effect, in order to afford an opportunity for a referendum petition to be filed. A full, fair expression of the electors of the City of Eugene was had at the special election and the amendment to the city charter was adopted.

The demurrer to the defendant's answer should have been overruled. The decree of the trial court is reversed and one will be directed to be entered in accordance with this opinion, declaring the special election held in the City of Eugene on July 2, 1924, valid, and that the charter amendment adopted at said election was legally adopted and is valid; that the injunction herein be dissolved and that plaintiff's complaint be dismissed.

                                    REVERSED WITH DIRECTIONS.

McBRIDE, C. J., concurs.

COSHOW and RAND, JJ., concur in a special opinion.

COSHOW, J., Concurring.—It is conceded by all parties concerned that no election can be held in this state without authority of law. This principle was recently announced by this court in *State ex rel.* v. *Kozer*, decided October 6, 1925.

It is conceded that the City of Eugene has made no provision either in its charter or by ordinance for calling special elections to submit to the voters of that city legislative matters under the initiative or referendum. It necessarily follows that the city is governed by the general law of the state on that subject.

Indeed its charter expressly so provides. Section 2 of the amendment to the city charter adopted at the general city election held April 6, 1924, and found in page 97 of the typewritten copy of the charter filed in Supreme Court Library, August 16, 1917, prescribes:

"Elections upon initiative measures shall be governed by the general laws and constitution of the state. * * Elections upon initiative and referendum measures, except as is herein otherwise provided, shall be governed by the constitution and laws of the State of Oregon; provided, however, that the time and manner of holding said elections shall be governed by such general laws and constitution of said state until the common council shall regulate the same by ordinance."

The general law on that matter is found in Sections 4105–4109, and in so far as material in this appeal is as follows:

"4106. * * No city ordinance, resolution or franchise shall take effect and become operative until thirty days after its passage by the council and approval by the mayor, * * except measures necessary for the immediate preservation of the peace, health or safety of the city; and no such emergency measure shall become immediately operative unless it shall state in a separate section the reasons why it is necessary that it should become immediately operative, and shall be approved by the affirmative vote of three-fourths of all the members elected to the city council, taken by ayes and noes, and also approved by the mayor."

"4109. * * Amendments to any city charter may be proposed and submitted to the people by the city council, with or without an initiative petition, but the same shall be filed with the city clerk for submission not less than sixty days before the election at which they are to be voted upon, and no amend-

ment of city charter shall be effective until it is approved by a majority of the votes cast thereon by the people of the city or town to which it applies. The city council may by ordinance order special elections to vote on municipal measures.''

It is conceded that the ordinance involved did not have the affirmative vote of three fourths—or of two thirds as required by the charter—of all members of the council. The emergency section of the ordinance is therefore ineffective. That does not invalidate the ordinance: *Barton* v. *Recorder's Court of Vale,* 60 Or. 273 (19 Pac. 349). For that reason no further attention will be given to the emergency section.

The last sentence in Section 4109, Or. L., authorizes the city council to order special elections to vote on municipal measures. Special elections must be called by ordinance. There is then a general law authorizing special elections on municipal measures proposed by the initiative. The crucial point in this controversy is whether or not the special election held in the City of Eugene, July 2, 1924, within less than thirty days, was called pursuant to that general law. The solution of that problem must be found in determining the construction of the word ''ordinance'' as used in the last sentence of said Section 4109. If the act of ordering an election is legislative, then it may be conceded for the purpose of this opinion that the election is invalid because held in less than thirty days after the ordinance was passed, that is, before the ordinance was in effect. In such event it .may .be deemed there was no authority for holding the election on that date.

Whether or not the ordinance calling the special election was legislative must be determined from what

the council did, not by the form of the action taken,
nor by the name given the performance by the legis-
lature. "Often executive powers are vested in the
council or legislative body and exercised by * * ordi-
nance. * * The form or name does not change the
essential nature of the real step taken. *The mode
of effecting the action is not important.*"

The ordinance assailed was designed to accomplish
three things, namely: First.  A special election to be
conducted on July 2, 1924.  Second. Provide poll-
books, ballots and other supplies for conducting the
election.  Third.  Name the polling places and offi-
cers necessary to conduct the election.

The calling of a special election is an executive
act: 9 R. C. L. 1000, 1001, §§ 20, 21.  Our Constitu-
tion, Article II, Section 18, providing for special
elections on recall commits the duty of calling the
election to the "officer with whom a petition for nomi-
nation to such office should be filed, *and the same
officer* shall *order* the special election when it is re-
quired."  This officer is the Secretary of State,
county or city clerk.  None of these officers has any
legislative authority.  The act of ordering a special
election on a certain date, when such an election is
authorized by law, is, therefore, a ministerial act.
The ordinance is not the source of authority for hold-
ing the special election except as to the date; it
merely ordered a special election by authority of the
general law: Or. L., § 4109.

Providing the supplies for conducting the election
is a ministerial act enjoined upon the city clerk by
general law: Section 4105, Or. L.  In county elections
this duty is performed by the county clerk, and in
the state by the Secretary of State.  That provision
in the ordinance assailed was entirely unnecessary

and added no force to said ordinance. It added nothing to the duties of city recorder, because that duty is fully provided for in the general law under which the election was ordered: Or. L., § 4105.

The same is true of the polling places. This duty is placed upon the sheriff in general elections under the direction of the County Court, which is not a legislative body. Indeed, the steps taken by the council in passing the ordinance assailed is very similar to the duties customarily and generally performed by our County Courts by an order.

But it is strenuously contended that since the law requires a special election to be called by ordinance, and that no ordinance goes into effect until thirty days after its passage, that the ordinance assailed did not take effect until after the election was held. The authorities do not support this contention: 7 McQuillin on Mun. Corp. 6621, § 351c; *Long* v. *City of Portland,* 53 Or. 92, 100 (98 Pac. 324, 98 Pac. 1111); *State* v. *Port of Astoria,* 79 Or. 23 (154 Pac. 399), and other authorities cited in the very able opinion of Mr. Justice BEAN in the instant case.

It will be noted that the provision postponing the operation of an ordinance for thirty days after its passage is found in the section providing for the referendum. This indicates the intention of the legislature to be in harmony with the authorities to the effect that the referendum applies to legislative matters only: 7 McQuillin, Mun. Corp. 6621, § 351c; *Long* v. *City of Portland,* 53 Or. 92, 100 (98 Pac. 324, 98 Pac. 1111). The only legislative enactment disclosed in the record was conducted by the people at the polls. All the council did was to submit to the people a proposed amendment to the charter, and the oppor-

tunity for the voters to express their will. The acts of the council and the special election was done under authority of the general law.

The charter of the City of Eugene provides:

"No city ordinance *enacting municipal legislation* shall take effect and become operative until thirty days after its passage by the Common Council and approval by its Mayor, except emergencies, etc."

Article IV, Section 1a of the state Constitution, reads:

"The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and *municipal legislation* of every character, in or for their respective municipalities and districts."

The charter of the City of Eugene is in harmony with our state Constitution. So even if the word "ordinance" as used in Section 4106 of Or. L. is broad enough to include every ordinance regardless of its content and intent as subject to the referendum, it must yield to the Constitution and charter, for it is provided in Section 4105, Or. L.:

"The provisions of this act shall apply in every city and town in all matters concerning the operation of the initiative and referendum in its *municipal legislation, on which such city or town has not made or does not make conflicting provision.*"

This provision clearly implies that municipalities may make local laws in conflict with the general law regulating the initiative and referendum in the cities of this state.

The learned Circuit Court considered the case of *National Bank of Commerce* v. *Town of Granada*, 41 Fed. 87, 44 Fed. 262, 48 Fed. 278, 54 Fed. 100

116 Or.—19

(4 C. C. A. 212), as authority for his decision. In page 104 of 54 Fed., CALDWELL, Circuit Judge for the Circuit Court of Appeal, says:

"It is admitted that the ordinance in question was not 'recorded in a book kept for that purpose,' and was not 'authenticated by the signature of the presiding officer of the * * board of trustees and the clerk,' and 'was never published in any paper,' or in any form or manner whatever."

The statute of Colorado applicable prescribed:

"All ordinances shall, as soon as may be after their passage, be recorded in a book kept for that purpose, and be authenticated by the signature of the presiding officer of the council or board of trustees and the clerk; and all by-laws of a general or permanent nature, * * shall be published in some newspaper published within the limits of the corporation, or, if there be none such, then in some newspaper of general circulation in the municipal corporation; * * and such by-laws and ordinances shall not take effect and be in force until the expiration of five days after they have been so published * * ."

The referendum was not involved in the Granada case. The learned judge who wrote the opinion does not directly hold the ordinance there involved to be legislation—what he held is succinctly stated in 54 Fed. 104, thus:

"It is obvious to our minds that the ordinance in this case was of a 'general or permanent nature,' and as such could 'not take effect and be in force until the expiration of five days' after its publication. It provided for an election, and therefore concerned every legal voter of the town. It affected every taxpayer, whether a voter or not. It affected the creditors of the town, present and future. It involved the making and execution of contracts, and various other matters relating to funding and floating indebtedness of the town. If such an ordinance is not of a 'gen-

eral or permanent nature,' it would be extremely diffi-
cult to suggest one that is.

"The provision of the act that such ordinances shall
not take effect or be in force until they are published
in the mode provided by the act is mandatory. This
ordinance, never having been published, never went
into effect.''

The ordinance assailed in the instant case may be
conceded to be of a general and permanent nature,
but that does not make it legislative. An order call-
ing a recall election would have the same nature. A
recall election is called by a ministerial officer having
no legislative authority. A record of the order call-
ing an election must be recorded so as to preserve the
evidence of the call. This must be done whether the
order be made by a body having legislative powers
or by a ministerial officer. In the Granada case this
record was required to be made in a certain way, and
doubtless applied to both legislative and ministerial
ordinances. Every ordinance passed by the council
of the City of Eugene takes effect immediately upon
its passage unless subject to the referendum, and,
therefore, the ordinance here involved went into effect
immediately after its passage. It must not be over-
looked that the ordinance in the Granada case covered
other matters then calling a special election. In that
case the steps necessary to pass an ordinance were
the issues. Here it is conceded that the ordinance was
legally passed, and the only question is, was the or-
dinance subject to be referred under our Constitution
and the city charter? The questions involved in the
two cases differ widely.

The intention of the legislature in authorizing a
special election to be called by ordinance may have
been due to the importance of the matter. It was
so prescribed in order to secure the attention de-

manded by the importance of the step. The legislature could have enjoined that duty upon the city recorder or clerk as has been done in the recall and the general law.

As has been clearly pointed out by Mr. Justice BEAN, to hold that an ordinance calling a special election under plaintiff's theory would itself be subject to the referendum. This result could reduce the referendum to an absurdity. Courts should not construe a law so as to make its provisions absurd: 36 Cyc., 1108, 1109, § c, notes 47, 52 and 53; 36 Cyc. 1111, § e; 2 Lewis' Sutherland on Statutory Construction (2 ed.), 913, § 489.

The conclusion herein reached is strictly in harmony with *State ex rel. v. Kozer,* above. In that case there was no law for holding the proposed election excepting the act vetoed by the Governor. The election called by the council of the City of Eugene and involved in this litigation is authorized by the general law of the state: Or. L., §§ 4105–4109.

The general law regarding elections under the initiative and referendum makes every provision for holding elections in cities which have not ordained ordinances for that purpose. Eugene is in that class. There was a law in effect in Eugene at the time the special election was ordered, so that the election was held by authority of law. The ordinance assailed herein was administering that law. It was an executive, not a legislative, order.

It is true that the word "ordinance" generally imports legislation. It is equally true that the word "order" does not, but indicates an executive or judicial act. It was thus expressed in *Bennett Trust Co. v. Sengstacken,* 58 Or. 333, 348, 349 (113 Pac. 863):

"Like the act in question here, the local option law requires a petition signed by a certain percentage of the legal voters, and upon the petition being presented in proepr form the county court issues an order for the holding of an election. * * Under the law providing for the incorporation of ports, the county court makes the order for the election."

The act has the same nature whether done by the County Court or the city council. In the last case above cited the election ordered by the County Court was valid because held by authority of law. For the same reason the election assailed in this proceeding must be held valid.

On May 1, 1924, a resolution proposing an amendment of the municipal charter of that city and providing that a special election should be held on July 2, 1924, for the submission of the proposed amendment to the legal voters of the city for their adoption or rejection was adopted by the common council of the City of Eugene. Attached to and made a part of said resolution was the proposed amendment itself, and this proposed amendment was filed on May 1, 1924, with the city clerk for submission to the legal voters of that city at said election for their approval or rejection. The proposed amendment was, therefore, filed with the city clerk more than sixty days before the day on which said election was to be held, and hence, if the method provided for submitting said proposed amendment failed to conform to the requirements of the statute, it was because the method by which it was adopted by the council was by resolution and not by ordinance. Subsequently, and on June 11, 1924, the council passed an ordinance which also directed that a special election should be held on said second day of July, 1924, for the purpose of voting on

said proposed amendment. The election was held on said date and the proposed amendment was adopted by a majority of the legal votes cast at said election.

Plaintiff contends that said special election was invalid because the amendment was not proposed and submitted to the people by the council by ordinance more than thirty days before the date on which said election was held. This contention is based upon a provision contained in Section 4106, Or. L., which, in part, reads as follows:

"No city ordinance, resolution or franchise shall take effect and become operative until after its passage by the council and approval by the mayor," etc., and because the charter of the city also contains a provision that

"No city ordinance enacting municipal legislation shall take effect and become operative until thirty days after its passage by the common council and approval by the m⹁yor," etc.,

while the defendants contend that the ordering of a special election for the submission of a proposed amendment of the charter is not municipal legislation and therefore is not within the prohibition of the statute or the charter.

In some respects the amendment of a charter is similar to the amendment of the Constitution. As to the latter:

"In submitting propositions for the amendment of the constitution, the legislature is not in the exercise of its legislative power, or of any sovereignty of the people that has been intrusted to it, but is merely acting under a limited power conferred upon it by the people, and which might with equal propriety have been conferred upon either house, or upon the governor, or upon a special commission, or any other body or tribunal. The extent of this power is limited

to the object for which it is given, and is measured
by the terms in which it has been conferred, and it
cannot be extended by the legislature to any other
object, or enlarged beyond these terms. * * '' 6
R. C. L., p. 29.

''In proposing a constitutional amendment, the leg-.
islature does not exercise its legislative power, but
performs a special function delegated to it by the con-
stitutional provision by which the proposal of amend-
ments is sanctioned. * * ''   25 R. C. L., p. 839.

There is this distinction, however, between the hold-
ing of a special election to vote upon the amendment
of a charter and a special election called by the legis-
lature.   The holding of a special election to vote upon
state measures can only be called by an act of the
legislature.   There is no provision of the Constitu-
tion or law which authorized any state official to call
a special state election, except in the exercise of the
recall, and hence the power resides exclusively in the
legislature.   This power, excepting the recall, can
constitutionally be exercised only by an act passed by
the legislature.   This act, of course, may be vetoed by
the Governor like any other act which the legislature
passes: *State* v. *Kozer*, recently decided.   But there
is no such constitutional limitation governing the
amendments of a city charter, and hence there is no
analogy between the two, except that in submitting a
proposed amendment to the charter the council of the
city is performing a special function delegated to it
by the Constitution and statutes of the state or by the
Constitution and charters of the city, as the case may
be, and hence, while the submission is not municipal
legislation, it is made by statute a municipal measure
and is governed by the statute unless the manner and
method of submission is provided for by the charter.

Looking to the charter of the City of Eugene, Section 25 thereof provides:

"The Common Council shall have authority to provide the manner of conducting elections and canvassing the votes cast thereat and to fill vacancies in office except as hereinbefore provided and to prescribe the qualifications of voters at municipal elections."

Section 30 thereof provides:

"The Recorder shall give ten (10) days' notice by publication in some newspaper in the City of Eugene of each general or special election, if a general election the notice shall contain the officers to be elected thereat, and the measures or other questions, if any, to be submitted; if a special election, the measures, if any, and any other question to be voted upon at such election, and the notice shall also contain the place or places designated for holding a general election or special election."

Section 2, Charter, page 97, above, is authority for the council to regulate city elections. Under the holding of *Curtis* v. *Tillamook City*, above, the regulation by ordinance supersedes the statutory regulations, since, under the Constitution, the regulation by the council would supersede and take the place of the statute so far as the manner and method of holding such elections are concerned. Section 15 of the Charter prescribes:

"Upon the passage of any ordinance the enrolled copy thereof, attested by the Recorder, shall be submitted to the Mayor by the Recorder, and if the Mayor approves the same he shall write thereon 'Approved,' with the date of such approval, and sign the same officially, and thereupon, unless otherwise provided therein, *such ordinance shall become a law and be in force and effect.*"

But whether or not the submission of this amendment of the charter of the city was municipal legislation, it is clear that it was not subject to the referendum powers of the city. It called for an election to vote upon a municipal measure which could only go into effect upon a majority of the votes cast supporting such measure, and as such, it was not subject to a referendum. Hence, without considering the effect of the ordinance passed on June 11, 1924, further than that it did regulate the time and manner of holding the special election, it is only necessary to say that this is not a direct proceeding brought for the purpose of enjoining the holding of the election itself, but is a special proceeding attacking the validity of an election which has been held, at which the proposed amendment was adopted. The statute, therefore, is not mandatory but directory, since the result of the election was not in any way affected by the election being called by resolution and not by ordinance.

The law upon this subject is well settled and the reason for the rule is plain: *Bennett Trust Co.* v. *Sengstacken,* 58 Or. 333, 349–352 (113 Pac. 863).

"In the construction of statutes, this word (mandatory) is applied to such as require to be obeyed, under penalty of having proceedings under them declared void. Directory statutes must be obeyed, but, if not, do not invalidate the act." 2 Bouvier's L. Dict., p. 305.

"As to mandatory and directory statutes, it is said that when the provision of a statute is the essence of the thing required to be done, it is mandatory; otherwise, when it relates to form and manner; and where an act is incident, or if jurisdiction acquired, it is directory merely." 2 Bouvier's L. Dict., p. 1032.

Section 223, 20 C. J., page 181, provides:

"Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result. If the statute simply provides that certain acts or things shall be done in a particular time or in a particular manner without declaring that their performance is essential to the validity of the election, they will be regarded as mandatory if they affect the actual merits of the election, and directory if they do not. Where the terms of the statute are absolute, explicit, and peremptory, no discretion is given; and when penalties are imposed against the violation of its respective terms they have the same effect as negative words and render its observance imperative. But this rule must be considered in connection with another rule that a statute prescribing the duties of election officers may be held either mandatory or directory according to the time and manner in which it is questioned. Before election it is mandatory if direct proceedings for its enforcement are brought, but after election it should be held directory, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or the ascertainment of the result, or unless the provisions affect an essential element of the election, or it is expressly declared by the statute that the particular act is essential to the validity of the election, or that its omission will render it void."

The language of the statute is, "the city council may by ordinance order special elections to vote on municipal measures." The language of the statute is not "may by ordinance only" order special elections to vote on municipal measures, and for that reason there is nothing in the statute showing that if the election has been held, the statute should be construed as mandatory. It cannot be construed as mandatory without overthrowing the majority rule of

the voters of Eugene expressed at an election of which they had due notice and at which they participated and settled the question of whether the amendment should be adopted or rejected. Nor is there anything in principle in the assertion that there is a distinction between an ordinance and a resolution so far as the validity of this election is concerned.

"A resolution of a council is but another name for an ordinance and if it is a legislative act it is immaterial whether it is called a resolution or an ordinance so long as the requirements essential to the validity of an ordinance be observed." 2 Bouvier's L. Dict., p. 556.

"Where the powers conferred on a town are to be exercised by ordinances to be passed by the town council, an order or resolution adopted by the council and entered on its records is held in point of form a valid exercise of the power." *Town of Tipton* v. *Norman*, 72 Mo. 380, 383–386; Words and Phrases, (1 ed.), p. 5026.

It is clear that the ordering of a special election by the council and the fixing of the date on which the same was to be held was not prescribing a rule of civil conduct, but was merely one of the steps necessary for carrying into effect the initiative powers of the people of Eugene to amend their charter. There is no reason why the powers of the council in that respect could not be exercised as well by resolution as by ordinance. Hence the election having been held, the result having been determined, unless the statute was mandatory, the election is not void, since the result would not have been different if the resolution which was adopted on May 1st had been in the form of an ordinance and not in the form of a resolution. The election was not invalidated, although a part of

the proceedings were irregular and did not strictly conform to the requirements of the statute.

"Statutes are not mandatory where they merely give directions as to method in the formal steps preparatory to an election at which there is the right and opportunity to accept or reject what such formalities present for action." 20 C. J., p. 95.

"The time for holding an election must be fixed in advance either by law or by the officers empowered by law to appoint the time." 20 C. J., p. 101.

There being nothing in the statute to indicate an intention that the election should be invalid if it was called and held pursuant to a resolution, and the statute not being mandatory, the result of the election is not subject to an indirect attack, and for these reasons I concur with the majority decision written by Mr. Justice BEAN.

Mr. Justice RAND concurs with this opinion.

BELT, J., Dissenting.—This is a suit to enjoin the issuance and sale of municipal bonds aggregating the sum of $500,000 which the defendant city proposes to negotiate for the purpose of constructing and maintaining a municipal public auditorium on or adjacent to the campus of the University of Oregon and within the corporate limits of the City of Eugene. The case hinges on the validity of a special election called for the purpose of submitting to a vote of the people a proposed charter amendment authorizing such bond issue. A resolution declaring the intention of the common council to propose such charter amendment was passed on May 1, 1924, and the date of the special election to be called was designated July 2, 1924. However, the ordinance, calling the election on the above date, was not passed and ap-

proved by the mayor until June 11, 1924. Pursuant
to the same a special election was held and the people
by majority vote approved the proposed charter
amendment. It is the contention of respondent that
the election was invalid and all proceedings subse-
quent thereto null and void, for the reason that the
ordinance calling it did not become effective until
thirty days after its passage and approval by the
mayor: It will be observed that the election was
held twenty-one days after the date of the ordinance.
It is conceded that the emergency clause to the ordi-
nance was of no force or effect in that a two-thirds
affirmative vote of the members of the council was
not obtained. Appellants contend the ordinance did
not pertain to municipal legislation, and therefore
became effective on the date of its passage and ap-
proval, viz., June 11, 1924. We are confronted, then,
with the question as to whether an ordinance call-
ing a special election for the purpose of submitting
such proposed charter amendment is a legislative
or an administrative act, and the answer thereto is
decisive of the case.

The complaint alleges, and it is admitted in the
answer, that:

"Neither the city of Eugene, Oregon, nor its com-
mon council ever has enacted any ordinances regu-
lating the time or manner of holding elections upon
either initiative or referendum measures or regulat-
ing the time and manner of holding special elections;
and that neither the said city nor its common council
ever has enacted any ordinance regulating the time
or manner of holding elections upon proposals sub-
mitted to the electors of said city by the said com-
mon council except as within this complaint specified;
that the election hereinafter specified as having been
attempted to be held on July 2, 1924, was a special
election, and that the city has no ordinance govern-

ing the holding of special elections upon proposals submitted by the common council except the ordinance described within paragraph 10 hereof."

Section 2, page 97, of the Charter of Eugene provides, in part, as follows:

"Elections upon initiative and referendum measures, except as is herein otherwise provided, shall be governed by the constitution and laws of the State of Oregon; provided, however, that the time and manner of holding said elections shall be governed by such general laws and constitution of said state *until the Common Council shall regulate the same by ordinance.*"

Reference to Section 4109, Or. L., discloses that "the city council may by *ordinance* order special elections to vote on municipal measures."

In view of the pleadings and the above charter and statutory provisions we need not be concerned with the resolution as authorizing such election, but must look to the ordinance. It is fundamental that a special election cannot be called without authority of law. "A resolution is not a law," as stated in *C. & N. P. R. R. Co.* v. *City of Chicago,* 174 Ill. 439 (51 N. E. 596), "but merely the form in which the legislative body expresses an opinion." A resolution, or order as it is sometimes called, is an informal enactment of a temporary nature, providing for the disposition of a particular piece of the administrative business of a municipal corporation: 19 R. C. L. 895. The distinction between resolutions and ordinances is well considered in *Long* v. *City of Portland,* 53 Or. 92 (98 Pac. 324, 1111), wherein the court said:

"The action of a municipal council may relate to questions or subjects of a permanent or general character, or to those which are temporary and restrictive

in their operation and effect; and ordinarily an ordinance relates to the former, while the latter may be adopted by resolution. The former must be enacted with all the formality required by the charter, while the latter may be adopted with less formality, and its legal effect determined less strictly, unless the charter otherwise provides. 2 Abbott's Municipal Corp., §§ 514–516; 1 Beach, Public Corp., §§ 483, 484, 486; 21 Am. & Eng. Ency. Law (2 ed.), 948; 28 Cyc. 347; *City of Alma* v. *Guaranty Sav. Bank,* 60 Fed. 203 (8 C. C. A. 564); *City of Lincoln* v. *Sun Vapor Street Light Co.,* 59 Fed. 756 (8 C. C. A. 253); *City of Central* v. *Sears,* 2 Colo. 589.

"Whatever may be the requirement as to the form of enactment, the former is municipal legislation, while the latter is not. In *Shaub* v. *Lancaster City,* 156 Pa. 362, 366 (26 Atl. 1067, 1068, 21 L. R. A. 691), it is said: 'But there is a well-marked distinction between acts that are legislative and that lay down a rule of action for the citizens of the city, and acts that relate to the daily administration of municipal affairs. The latter may well be described as "business" to be transacted by councils, and may be properly left to them to dispose of by "order or resolution." ' "

At any event, the council invoked the power of ordinance to call the election, and it is unnecessary to say what might have been done by resolution.

Section 1a, Article IV, of the Constitution, in part, provides:

"The initiative and referendum powers reserved to the people by this Constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide

for the manner of exercising the initiative and referendum powers, as to their municipal legislation."

The charter of the City of Eugene, Section 1, page 62, reads:

"No city ordinance enacting municipal legislation shall take effect and become operative until thirty days after its passage by the common council and approval by the mayor. * * "

Section 4106, Or. L., provides:

"No city ordinance, resolution, or franchise shall take effect and become operative until thirty days after its passage by the council and approval by the mayor, unless the same shall be passed over his veto, and in that case it shall not take effect and become operative until thirty days after such final passage, except measures necessary for the immediate preservation of the peace, health, or safety of the city; and no such emergency measure shall become immediately operative unless it shall state in a separate section the reasons why it is necessary that it should become immediately operative, and shall be approved by the affirmative vote of three-fourths of all the members elected to the city council, taken by ayes and noes, and also approved by the mayor."

This court in *Long* v. *City of Portland, supra,* construing the above section of the statute, held that such act applied only to ordinances, resolutions and franchises as are subject to the referendum, and, by virtue of Section 1a, Article IV, come within the term "municipal legislation."

It is to be borne in mind that "all local, special, and municipal legislation, of every character," is subject to referendum; hence the provision in the charter, no "ordinance enacting municipal legisla-

tion shall take effect and become operative until thirty days after its passage. * * '' What was the intention of the common council of Eugene? Was the municipal legislative body undertaking to legislate or merely to perform an administrative act? What was the purpose of the emergency clause? If the ordinance did not pertain to a matter of "municipal legislation," there was no need of the emergency clause, as the referendum could not be invoked as to administrative matters. While it is true, as held on rehearing in *Curtis* v. *Tillamook City,* 88 Or. 453 (172 Pac. 122), that Section 1a, Article IV, of the Constitution authorizes municipalities to provide for the manner of exercising the initiative and referendum powers as to municipal legislation, and that such constitutional provision is written into and is a component part of every city charter, yet the City of Eugene did not see fit to provide for the exercise of such power in any way other than by ordinance. Where the law provides, as in this case, that a special election may be called by ordinance, it will not permit the calling of such by resolution: *Thornton* v. *Portland Ry., L. & P. Co.,* 63 Or. 478 (128 Pac. 850).

In the very recent case of *State ex rel.* v. *Kozer*— Mr. Justice BROWN speaking for the court—the question as to whether the Governor of the State of Oregon had authority to veto a bill of the legislature calling a special election was involved. That case, as this, hinged on the question of whether the calling of a special election was an administrative or a legislative act. It was held, in effect, that a bill calling a special election was a matter of legislation that must be submitted to the Governor for his rejection or approval, and his veto power was sustained. If the

calling of a special election in the case cited is "legislation," why is it not so in the instant case? What is the distinction?

While the Constitution and charter vests the city with power to call a special election, the exercise of such power must be initiated by a legislative act. The time and place of general elections are fixed by law, but not so with special elections. The time and place of the latter depend upon statutory enactment: 20 C. J. 97. As stated in McQuillin on Municipal Corporations (Supplement), Section 694:

"A municipality cannot submit an ordinance to a vote of the electors without legal authorization." *City of Alma* v. *Guaranty Sav. Bank,* 60 Fed. 206 (8 C. C. A. 564).

Municipal laws are enacted, not by resolutions, but by ordinances: *McDowell* v. *People,* 204 Ill. 499 (68 N. E. 379); *City of Mound* v. *Mason,* 262 Ill. 392 (104 N. E. 685).

In *National Bank of Commerce* v. *Town of Granada,* 54 Fed. 100 (4 C. C. A. 212), was involved the validity of a special election called by ordinance to authorize the funding of the city's indebtedness. The court said:

"A measure requiring an expression of opinion from the voters of the town, at the ballot box, and involving such large values, and of so much interest to the taxpayers of the town and the holders of its securities, through so many years, ought not to be carried into effect except by the most solemn and deliberate mode of proceeding known to the law for giving expression to the corporate will. That mode is by ordinance. * * It is obvious to our minds that the ordinance in this case was of a 'general or permanent nature,' and as such could 'not take effect and be in

force until the expiration of five days after its publication. It provided for an election, and therefore concerned every legal voter of the town. It affected every taxpayer, whether a voter or not. It affected the creditors of the town, present and future. It involved the making and execution of contracts, and various other matters relating to funding the floating indebtedness of the town. If such an ordinance is not of a 'general or permanent nature,' it would be extremely difficult to suggest one that is."

McQuillin on Municipal Corporations (Supplement), Section 634, says:

"In construing particular charter and statutory provisions ordinances have been adjudged essential to accomplish the following legislative purposes: To levy a tax; to abate a nuisance; * * to call an election"— citing *Reed* v. *Wing,* 168 Cal. 706 (144 Pac. 964), in which jurisdiction the initiative and referendum apply.

An ordinance authorizing an election to adopt or reject a street railway franchise was held to be law within the meaning of a statute which renders illegal voting a crime: *In re Siegel,* 263 Mo. 375 (173 S. W. 1, Ann. Cas. 1917C, 684).

In *Long* v. *City of Portland, supra,* upon which appellants put much reliance, the court held that an ordinance exacting a license fee for the operation of vehicles was a legislative act and therefore subject to referendum. It would seem that an ordinance calling a special election to submit to the voters of a municipality a question of incurring such a large indebtedness is likewise a legislative act in that it is of general application and affects all within the jurisdiction of the city.

Our attention is called to the peculiar situation that would result if the referendum were invoked on an ordinance calling a special election. It must be

conceded that under the operation of the referendum the will of the common council can thus be defeated as to the time of holding an election, and the question of amending the city charter would by operation of law be held in abeyance until the general election, unless enough affirmative votes were obtained to authorize an emergency clause to the ordinance. It would be unreasonable to vote at the general election in November on the question of calling a special election at a date prior thereto. It is true that a small percentage of people by invoking the referendum can thus defeat the will of the council, but it is not the mission of courts to cure defective legislation by construction.

In *Curtis* v. *Tillamook City,* 88 Or. 443 (171 Pac. 574, 172 Pac. 122), the council, on April 2, 1921, passed an ordinance calling a special election to be held on the twelfth day of the same month, but there was an emergency clause attached to the ordinance which made it effective from the date of its passage and approval by the mayor. The case last cited is therefore not controlling here.

*Ehrhardt* v. *City of Seattle,* 33 Wash. 664 (74 Pac. 827), holds that an election to amend the charter of the defendant municipality may be called by resolution, but this decision is based in part on the following charter provisions (Section 1, Article XX of the Charter of Seattle):

"Any amendment or amendments to this charter may be proposed in the city council, and if the same shall be agreed to by a majority of all the members elected, such proposed amendment or amendments shall be entered upon the journal with the yeas and nays of the members voting thereon. Upon the passage of any such amendment or amendments the same shall be submitted to the electors of the city. * * * "

The court said:

"No formality is provided for proposing such amendments. The provision is that the amendment shall be proposed in the city council. There are no specific directions for such proposal, and no requirement that the proposal shall be in the form of an ordinance, or that any formality shall be observed. Since a proposal of this kind is not legislative in the sense that it is a permanent law regulating the affairs of the city over .which the council has control, we conclude it is, and was intended by section 1, art. 20, *supra,* to be, a ministerial or *quasi* legislative act, and, therefore, under the authorities cited, may be passed by resolution without the formalities required of an ordinance."

It is noteworthy that the court added:

"Of course, if any other mode is prescribed, it must be closely adhered to."

In other words, as this court has often said, the "mode of power is the measure of power."

It is granted that the act of ordering a clerk to advertise for bids in the construction of a certain bridge, as in *Brazell et al.* v. *Zeigler,* 26 Okl. 826 (110 Pac. 1052), is purely administrative and arises from the "business" incidental to the operation of municipal government. The same may be said by *Yarbrough, Mayor,* v. *Donaldson,* 67 Okl. 318 (170 Pac. 1165), in which the common council of a city proposed by resolution to sell and dispose of its electric light plant. We see no analogy between those cases and the one at bar.

The calling of a special election for the purposes involved herein is municipal legislation and therefore subject to referendum. The ordinance in question did not become operative until thirty days after its pas-

sage and approval by the mayor. It follows that the election held pursuant to the same was null and void. The decree of the trial court enjoining the issuance and sale of the bonds described in the proposed charter amendment should be affirmed.

Burnett and Brown, JJ., concur.